# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### DETROIT DIVISON

**GABRIEL GREEN and**
**VALERIE HALL-GREEN, individually**
**and on behalf of all others**
**similarly-situated,**

      **Plaintiffs,**

**v.**                    **CASE NO.: 2:20-cv-13079-GCS-DRG**
                                **The Honorable George Caram Steeh**

**FCA US LLC,**

      **Defendant.**

_____/

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

## SUMMARY OF MOTION

Named Plaintiffs, Gabriel Green and Valerie Hall-Green (the "Greens" or "Named Plaintiffs"), on behalf of themselves and a putative Settlement Class (collectively, "Plaintiffs") hereby move this Court for an Order granting preliminary approval to the parties' proposed Class Action Settlement Agreement and Release;[1] preliminarily certifying the proposed Settlement Class for settlement purposes only; designating Named Plaintiffs as the settlement Class Representatives and their attorneys as Class Counsel; approving the form and manner of the Notice of Settlement; authorizing the Settlement Administrator to disseminate the Notice of Settlement to the Settlement Class Members; setting a deadline for Settlement Class Members to opt out or object to the proposed Settlement; and scheduling a Final Approval Hearing no earlier than one hundred twenty (120) days after this Court's Preliminary Approval Order.

As explained further below, with the assistance of a highly-respected ERISA and class action mediator, Plaintiffs and Defendant FCA US LLC ("Defendant") (collectively the "Parties") have reached a tentative class-wide resolution for which Plaintiffs now seek Court approval. Specifically, the proposed Settlement provides for Settlement Payments to be made to approximately 29,798 Settlement Class

---

[1] The Class Action Settlement Agreement and Release (the "Agreement" or "Settlement") is attached as Exhibit "B". Certain defined terms contained herein shall have the same meaning as set forth in the Agreement.

Members.  The Settlement Administrator will create a non-reversionary Settlement

Account, into which Defendant will deposit a Gross Settlement amount of

$600,000.00.  The Settlement Class Members will not be required to take any action

to receive a portion of the funds, making it a "claims paid" settlement.  Importantly,

no funds will revert to Defendant.  Settlement Class Members are each entitled to

*pro rata* gross amounts from the Settlement Account totaling approximately $20.14

with net Settlement Payments of approximately $10.40.[2]

These amounts are consistent with class action settlements in cases involving

similar allegations under the Consolidated Omnibus Budget Reconciliation Act of

1985 ("COBRA") approved by other federal courts.  *See, e.g.*, *Vazquez v. Marriott*

*Int'l, Inc*., No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020), ECF No. 127

(court approved class action settlement with gross recovery of $13.00 per class

member in case with allegedly deficient COBRA notice); *Rigney v. Target Corp*.,

No. 8:19-cv-01432-MSS-JSS (M.D. Fla. Mar. 24, 2021), ECF Nos. 58, 59 (court

approved class action settlement with gross recovery of $17.00 per class member in

case with allegedly deficient COBRA notice); *Hicks v. Lockheed Martin Corp, Inc*.,

---

[2] Estimated net *pro rata* Settlement Payments to class members are calculated as follows: $600,000 Gross Settlement, less up to $200,000 (attorneys' fees), less up to $6,549 (litigation costs), less up to $10,000 (Named Plaintiffs' Service Awards), less $73,516 (estimated settlement administration costs), equals $309,935 (the Net Settlement Proceeds), divided by 29,798 estimated Settlement Class Members, equals approximately $10.40 (net Settlement Payment per Settlement Class Member).

No. 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019), ECF No. 41) (court approved class action settlement with gross recovery of $24.00 per class member in case with allegedly deficient COBRA notice); *Gilbert v. SunTrust Banks, Inc*., No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016), ECF No. 80 (court approved class action settlement with gross recovery of $32.00 per class member in case with allegedly deficient COBRA notice).

In sum, Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate and ask that it be approved accordingly.  It was reached through arm's length negotiations conducted by experienced practitioners and with the assistance of a nationally-respected class action mediator, Martin F. Scheinman, who has extensive experience mediating ERISA-based claims.  In further support thereof, Plaintiffs state the following:

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.     Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes?

**Plaintiffs' Answer: Yes**.

2.     Should Plaintiffs' counsel be appointed as Class Counsel and the Plaintiffs appointed as Class Representatives?

**Plaintiffs' Answer: Yes**.

3.     Is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed Settlement Class?

**Plaintiffs' Answer: Yes**.

4.     Does the Notice of Settlement and process proposed in the Agreement for distributing it to Settlement Class Members satisfy the requirements of Rule 23 and Due Process?

**Plaintiffs' Answer: Yes**.

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Plaintiffs rely on Fed.R.Civ.P. 23(a) and Fed.R.Civ.P. 23(b)(3) to demonstrate why the Court should certify the Settlement Class on a preliminary basis for settlement purposes only.

Plaintiffs also rely on several federal court decisions approving similar class action settlements in COBRA notice cases like this, including *Vazquez v. Marriott Int'l, Inc*., No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020), ECF No. 127; *Rigney v. Target Corp*., No. 8:19-cv-01432-MSS-JSS (M.D. Fla. Mar. 24, 2021), ECF Nos. 58, 59; *Hicks v. Lockheed Martin Corp, Inc*., No. 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019), ECF No. 41; and *Gilbert v. SunTrust Banks, Inc*., No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016), ECF No. 80.

## I.   <u>BACKGROUND AND OVERVIEW OF MOTION</u>.

On November 18, 2020, Named Plaintiff Gabriel Green filed a Class Action Complaint (Doc. 1) ("Complaint") against Defendant in which he asserted claims for himself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by COBRA.

The Complaint alleged that Defendant violated COBRA notice requirements by providing Named Plaintiff Gabriel Green and the putative class members whom he sought to represent with a deficient COBRA notice (the "COBRA Notice") in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a).  Defendant specifically denies any wrongdoing with respect to these allegations.  The Parties have since reached an Agreement that, if approved by this Court, will resolve all claims of Plaintiffs and putative class members against Defendant.

As set forth above and in the Parties' Class Action Settlement Agreement and Release, attached hereto as Exhibit B, the Settlement provides for Settlement Payments to be made to approximately 29,798 Settlement Class Members.  The Settlement Administrator will create a non-reversionary Settlement Account, into which Defendant will deposit a Gross Settlement amount consisting of $600,000.00.  The Settlement Class Members will not be required to take any

action to receive a Settlement Payment, making it a "claims paid" settlement. Settlement Class Members will receive a *pro rata* gross amount of the Settlement Account totaling approximately $20.14. Given the size of the class, this gross amount is consistent with COBRA class action settlements that have been approved by other federal courts. If the requested amounts are granted for attorneys' fees and costs, administrative expenses, and Service Awards to the Named Plaintiffs, the Parties anticipate that each Settlement Class Member will receive a net Settlement Payment of approximately $10.40.

If any money remains in the Settlement Account after these distributions and after Settlement Class Members have had 60 days to cash their Settlement Payments, the Settlement Administrator shall pay leftover funds as a *cy pres* donation to a mutually-agreeable non-profit 501(c)(3) charity, subject to Court approval. The proposed Settlement is fair and reasonable, and should be granted preliminary approval by the Court.

### A.    <u>Allegations Included in Plaintiffs' Complaint</u>.

This is a putative class action brought by Named Plaintiffs against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a). The lawsuit generally alleges that Defendant provided Named Plaintiffs and members of their putative class with a deficient COBRA Notice. More

specifically, Named Plaintiffs asserted that Defendant's COBRA Notice did not adequately inform them how to exercise their rights to elect COBRA coverage because, in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*., Defendant's Notice: (i) included inaccurate and misleading threats of criminal penalties and fines; and, (ii) was not written in a manner calculated to be understood by the average plan participant.  As a result of the alleged violations in the Complaint, Named Plaintiffs sought statutory penalties, injunctive relief, attorneys' fees, costs and expenses on behalf of themselves and a putative class of all others similarly-situated.

By way of further background, Named Plaintiff Gabriel Green filed a First Amended Class Action Complaint adding his wife, Valerie, as a named plaintiff, on February 3, 2021.  (*See* Doc. 9).  Defendant filed a dispositive Motion to Dismiss on February 17, 2021, raising a variety of arguments, including lack of Article III standing and failure to state a claim.  (*See* Doc. 10).

Ultimately, the Court granted in part and denied in part Defendant's Motion to Dismiss. Defendant also filed a Motion for Reconsideration (*see* Doc. 21) as to the Court's Order denying its Motion to Dismiss, which was also denied. (*See* Doc. 26).

The Parties filed their Joint Discovery Plan on August 20, 2021, and the Court entered its Scheduling Order on August 23, 2021. That same day, Plaintiffs propounded on Defendant written discovery requests, a Fed.R.Civ.P. 30(b)(6) deposition notice, as well as notice of intent to serve a third-party subpoena.

Following the denial in part of Defendant's Motion to Dismiss and denial of Defendant's Motion for Reconsideration—but after significant discovery efforts were already underway—counsel for both sides explored the possibility of an early class-wide resolution. Based on discussion between counsel for both sides, the Parties then agreed an early class-wide mediation might be productive to try and resolve this case on a class basis. Mediation was then scheduled for November 8, 2021, with highly-respected ERISA and class action mediator, Martin F. Scheinman.

As explained further below, with the assistance of Mr. Scheinman, the Parties eventually resolved this case and Named Plaintiffs now seek court approval of the proposed class action settlement.

## B.    **Defendant's Defenses**.

Had mediation been unsuccessful, Defendant had available to it myriad defenses to the Named Plaintiffs' allegations. Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with

regard to Named Plaintiffs and/or any putative class member.  In fact, as part of the Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in this case, denies that the claims asserted by Named Plaintiffs are suitable for class treatment other than for settlement purposes, and Defendant denies that it has any liability whatsoever.  The Agreement and this Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.  However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

### C.   <u>Settlement Negotiations and Mediation</u>.

The Parties attended a mediation before a highly-respected ERISA and class action mediator, Martin F. Scheinman, on November 8, 2021.  After extensive arm's length negotiations—between experienced counsel for an entire day and into the evening—a tentative deal was reached.  As a result of the

agreement in principle reached at mediation, the Parties agreed to enter into the Agreement, for which Named Plaintiffs now seek Court approval.

In sum, the Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising from, related to, or based upon this litigation as to the Named Plaintiffs and all putative class members.

## II.    THE PROPOSED SETTLEMENT.

### A.    The Proposed Settlement Class.

The Agreement defines the proposed Settlement Class as follows: "All participants and beneficiaries in a FCA US LLC health plan that is subject to ERISA and COBRA who were sent the COBRA Notice by or on behalf of Defendant at any time during the Class Period [*i.e.*, between November 18, 2017 and November 18, 2020] who did not elect COBRA" (the "Settlement Class").

### B.    Benefits to the Settlement Class and Named Plaintiffs.

The Agreement, if approved, will resolve all claims of Named Plaintiffs and all Settlement Class Members in exchange for Defendant's agreement to pay $600,000.00 into the Settlement Account.    This is a "claims paid" non-reversionary settlement.  Every Settlement Class Member who does not timely opt out will receive a check for their respective Settlement Payment, without

having to take any action, mailed to their last known address by the Settlement Administrator.

From the Settlement Account will be deducted amounts for the costs of settlement administration, Named Plaintiffs' counsel's fees and litigation costs, and any Service Awards to Named Plaintiffs, resulting in the "Net Settlement Proceeds," which will be allocated among the approximately 29,798 Settlement Class Members equally on a *pro rata* basis. No funds revert to Defendant. Any funds that are unclaimed (which shall only arise if/when a check is mailed but then not timely cashed) shall revert to a mutually-agreeable *cy pres* recipient. The Parties have selected Legal Services of Eastern Michigan,[3] a 501(c)(3) non-profit legal aid organization, and will ask the Court to approve it as the *cy pres* recipient.

The Parties negotiated the proposed Settlement on a common fund basis, meaning that the settlement offers the Parties were exchanging were inclusive of

---

[3] *See* https://www.lsem-mi.org/about-us/ ("Since 1951 Legal Services of Eastern Michigan (LSEM) has delivered free civil legal assistance to persons living in poverty. Its mission is to use legal skills to address the causes and effects of poverty. Special emphasis is placed on those issues that affect survival needs of low-income people. This work is done both reactively, by addressing individual legal needs and proactively by engaging in impact work that provides systemic change affecting the poverty community as a whole. Most clients served live at 125% of poverty or below. This financial eligibility threshold is higher depending on certain funding criteria for specific services.").

all attorneys' fees and costs, incentive awards, and administrative expenses.  The Parties did not negotiate attorneys' fees until after agreeing on all terms related to the size of the common settlement fund and the class definition.

With the Settlement Class comprised of approximately 29,798 members, each Settlement Class Member who does not opt out of the Settlement Class is entitled to a gross *pro rata* amount of the Settlement Account totaling approximately $20.14.  If the requested amounts are granted for attorneys' fees and costs, administrative expenses, and the Named Plaintiffs' Service Awards, the Parties anticipate that each Settlement Class Member will receive a *pro rata* Settlement Payment from the Net Settlement Proceeds of approximately $10.40, an amount consistent with settlements in many other large COBRA notice class action cases like this.

### C.   Administration of Notice.

The Parties have agreed to utilize a private, third-party vendor, American Legal Claim Services, LLC, to administer the Settlement, including but not limited to distribution of the Notice of Settlement, in this case.  The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Settlement Account.

Within ten (10) business days of the Court's preliminary approval of the Agreement, Defendant shall provide to the Settlement Administrator a list of the full names and last known mailing addresses of each Settlement Class Member. Moreover, within ten (10) business days after receiving the list from Defendant, the Settlement Administrator shall mail the short form Notice of Settlement (attached hereto as Exhibit C, and as Exhibit 1 to the Agreement), by first-class U.S. Mail to all Settlement Class Members. The short form Notice of Settlement shall apprise the Settlement Class Members of the existence of the Agreement and of the Settlement Class Members' eligibility to recover their *pro rata* portion of the Net Settlement Proceeds, and will include an explanation of the "claims paid" process, as well as an explanation as to what happens if the settlement checks are not timely cashed. Namely, uncashed funds will be made part of a donation to a mutually-agreeable *cy pres* recipient.

The Notice of Settlement also shall inform Settlement Class Members of: (1) the material terms of the Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Agreement if they do not opt out; (5) the date, time and location of the Final Approval Hearing scheduled by the Court (to be held at least 120 days after the Court's Order preliminarily approving the Settlement); and (6)

that the Court retains the right to reschedule the Final Approval Hearing without further notice.

The Notices of Settlement in this case were modeled after notices to class members approved by other federal courts in cases involving allegedly deficient COBRA notices, including in *Rigney, et al. v. Target Corp.*, No. 8:19-cv-01432-MSS-JSS (M.D. Fla. July 14, 2020), ECF Nos. 49-4, 52; *see also Vazquez v. Marriott International, Inc.*, No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020), ECF No. 127; *Hicks v. Lockheed Martin Corp, Inc.*, No. 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 3, 2019), ECF Nos. 33-3, 33-4, 34; *Carnegie v. FirstFleet Inc.*, No. 8:18-cv-01070-WFJ-CPT (M.D. Fla. Feb. 22, 2019), ECF Nos. 53-3, 55; *Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-cv-00118-SDM-JSS (M.D. Fla. April 4, 2018), ECF Nos. 88-2, 89.

The Agreement provides that Settlement Class Members who choose to opt out or object to the Settlement may do so within 60 days of the Notice of Settlement mailing date. If the Court grants final approval of the Settlement, Defendant will deposit the full amount of the Gross Settlement into the Settlement Account within fifteen (15) days of the Effective Date (as that term is defined in paragraph 18 of the Agreement). Checks in the amounts of the Settlement Payments will be mailed to all Settlement Class Members within

fifteen (15) days after receipt by the Settlement Administrator of the Gross Settlement amount.  To the extent any money remains in the Settlement Account after these distributions and after Settlement Class Members have had 60 days (in addition to a ten (10) day grace period) in which to cash their settlement checks, such monies shall be paid as a *cy pres* donation, subject to Court approval.

### D. <u>Attorneys' Fees and Costs and the Named Plaintiffs' Service Awards</u>.

Pursuant to the Agreement, Class Counsel is authorized to petition the Court for up to one-third of the Gross Settlement amount (*i.e.*, up to $200,000.00) as attorneys' fees, plus reasonable litigation costs (*i.e.*, up to $6,549.00).  Named Plaintiffs will file a separate motion seeking approval for Class Counsel's fees and costs at least fourteen (14) days prior to the Settlement Class Members' deadline to opt out or object to the Settlement.  Defendant does not oppose the amount of fees and costs sought by Class Counsel, as specified above.

Additionally, each Named Plaintiff is entitled to apply to the Court for a Service Award not to exceed $5,000 each (for a total of $10,000 between the Greens), and Defendant does not oppose the requested Service Award amounts. Named Plaintiffs will include their request for their Service Awards in their motion for Class Counsel's fees and costs.  Neither Settlement approval nor the

size of the Gross Settlement are contingent upon the Court's approval of any amount of Class Counsel's requested fees and costs or the Greens' requested Service Awards.

### E.    Class Action Fairness Act Notice.

Defendant will submit the notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA") to the appropriate Federal and State officials.

## III.   MOTION AND SUPPORTING MEMORANDUM OF LAW.

Before deciding whether to grant preliminary approval of the proposed Settlement, the Court must first determine whether the proposed Settlement Class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In this case, Plaintiffs seek to have this case certified for settlement purposes only pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

Beginning with Rule 23(a), class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, because Plaintiffs seek certification under Rule 23(b)(3), they must also demonstrate that (i) common questions of law or fact predominate over individual

issues and (ii) a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites and, thus, should be certified. *See, e.g., Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015).

### A.   The Requirements of Rule 23(a) are Met for Purposes of Approving the Proposed Settlement.

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiffs have satisfied all four requirements under Rule 23(a) for purposes of approving the proposed Settlement.

### 1.   Numerosity.

Rule 23(a)(1) first requires Plaintiffs to show that the number of persons in the proposed Settlement Class is so numerous that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Typically, a class of 40 or more is sufficient to satisfy numerosity. *Curry v. SBC Commc'ns, Inc.,* 250 F.R.D 301, 310 (E.D.

Mich. 2008) (noting that 40 class members is sufficient to satisfy the numerosity requirement).

Here, there are approximately 29,798 members in the proposed Settlement Class. Thus, the numerosity standard is satisfied. *See Davidson v. Henkel Corp.,* 302 F.R.D. 427, 436–37 (E.D. Mich. 2014) (certifying a class of 49 plaintiffs).

### 2.   **Commonality.**

Next, Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc*., 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See Whirlpool Litig.*, 722 F.3d at 852–53.

In this case, common questions of law and fact exist among the Plaintiffs and the proposed class members for purposes of approving the Settlement.  All were participants in or beneficiaries in a FCA US LLC health plan that is subject to ERISA and COBRA, were sent copies of Defendant's allegedly deficient

COBRA Notice, and did not elect COBRA continuation coverage following their receipt of that purportedly inadequate notice.  Such common issues of law and fact have been found to satisfy commonality in similar COBRA cases.  *Morris v. US Foods, Inc*., No. 8:20-CV-105-SDM-CPT, 2021 WL 2954741, at *5 (M.D. Fla. May 17, 2021); *Vazquez v. Marriott Int'l, Inc*., No. 817CV00116MSSMAP, 2018 WL 3860217, at *3 (M.D. Fla. Aug. 7, 2018) (certifying Rule 23 class in COBRA notice case and finding commonality satisfied based on same factors); *see also Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class").

Additional common issues exist in this case, including: (1) whether Defendant violated COBRA's notice requirements; (2) whether, and to what extent, statutory penalties are appropriate. Each Settlement Class Member received the allegedly inadequate COBRA Notice and, as such, would have an alleged claim for statutory penalties.  Plaintiffs have established common questions of fact concerning whether the COBRA Notice complies with the law. Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied for purposes of approving the Settlement.

3.    **Typicality**.

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 157 n.13 (1982); *see also In re Checking Account Overdraft Litig.,* 275 F.R.D. at *3 n.8 (citation omitted). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *Reese v. CNH America, LLC,* 227 F.R.D. 483, 487 (E.D. Mich. 2005).

Here, Named Plaintiffs are typical of the Settlement Class they seek to represent, as they received the same COBRA Notice as the Settlement Class Members and their claims stem from that COBRA Notice. *Date v. Sony Elecs., Inc.,* No. 07-15474, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . .their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "the class

16

representatives' claims [arose] from the same events, legal documents, and consequences and legal theories affecting all [class members]").

Indeed, whether a COBRA Notice provides adequate information is not based on an individual's understanding of the COBRA Notice, but rather, an objective determination of whether the Notice complies with the letter of the statute. *Rodriguez v. Int'l Coll. of Bus. and Tech*., 364 F.Supp.2d 40, 46 (D.P.R. 2005) ("Neither a plaintiff's actual knowledge of his rights under COBRA nor his prior COBRA related job responsibility, dispenses with a plan administrator's obligation to give the employee [proper] notification") (citing *Torres-Negron, et al. v. Ramallo Bros. Printing Inc*., 203 F.Supp.2d 120, 124-125 (D.P.R. 2002)).

Thus, whether Defendant's contested COBRA Notice complies with the law, does not depend on Plaintiffs' personal characteristics; but, rather, on whether the COBRA Notice is understandable by an average plan participant. 29 C.F.R. 2590.606-4(b)(4). This requirement has been interpreted as "an objective standard rather than requiring an inquiry into the subjective perception of the individual [plan] participants." *Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 407 (8th Cir. 1995) (interpreting regulatory requirements for Summary Plan Descriptions, which are subject to an identical regulatory requirement to be written in a manner calculated to be understood by the average plan participant).

17

In sum, Named Plaintiffs' claims are typical of all Settlement Class Members and their resolution does not depend on Named Plaintiffs' personal characteristics. *Vazquez*, 2018 WL 3860217, at *4. Accordingly, Rule 23(a)(3) is also satisfied for purposes of approving the Settlement. *See Pierce,* 2006 U.S. Dist. LEXIS 98847, at *13 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory").

### 4.    Adequacy.

The final Rule 23(a) prerequisite requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co*., No. 05-74730, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp*., 532 F.2d 511, 525 (6th Cir. 1976)). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same

injury, and thus, seeks the same relief as the other class members. *See Beattie v. CenturyTel, Inc*., 511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem*, 521 U.S. at 625–26).

In this case, Named Plaintiffs—like each and every one of the Settlement Class Members—received the same allegedly deficient COBRA Notice from Defendant sometime between November 18, 2017 and November 18, 2020. Thus, Named Plaintiffs and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are allegedly entitled. As such, Named Plaintiffs do not have any interests antagonistic to those of the proposed Settlement Class. Indeed, Named Plaintiffs' pursuit of this litigation is evidence of the same.

Likewise, proposed Class Counsel—Brandon J. Hill and Luis A. Cabassa from Wenzel Fenton Cabassa, P.A., along with Chad Justice from Justice for Justice, LLC—have extensive experience litigating class actions of similar size, scope, and complexity to the instant action. They regularly engage in major complex litigation involving employment and consumer-related claims, including cases alleging deficient COBRA notices like this case. Plaintiffs' counsel have the resources necessary to conduct litigation of this nature, and have been appointed lead class counsel by federal courts throughout the country in

19

more deficient COBRA notices cases than any other firms. *See generally* Declarations of Luis A. Cabassa, Brandon J. Hill, and Chad A. Justice.

Further, proposed Class Counsel have devoted substantial resources to pursuing claims against Defendant for its allegedly unlawful COBRA Notice, including extensively litigating this matter, as described above, investigating Plaintiffs' and the Settlement Class's claims, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery (albeit much of it stayed pending settlement discussions and mediation), engaging in extensive settlement discussions, preparing for and attending a lengthy mediation and, ultimately, negotiating the Settlement now before the Court.

In sum, both the proposed Class Representatives and Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency. Accordingly, the adequacy requirement is also met for purposes of approving the Settlement.

## B. The Requirements of Rule 23(b)(3) for Class Certification are Also Met.

In addition to satisfying Rule 23(a), parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 623. Here, Plaintiffs seek certification for purposes of the Settlement under Rule 23(b)(3), which allows a class action to be maintained if: (1) questions

of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both of these criteria are satisfied here for purposes of approving the Settlement.

## 1. Predominance.

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement of Rule 23(a) in that both require the existence of common questions of law and fact. However, Rule 23(b) imposes the more stringent requirement that common issues predominate over individual issues. *Machesney v. Lar-Bev of Howell, Inc*., 292 F.R.D. 412, 423 (E.D. Mich. 2013). In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Common issues are at the heart of a case when there is generalized

evidence that would prove or disprove an element of the action on a class-wide basis. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001).

In the present case, the common questions identified above predominate over any individualized issues. The central issues revolve around a standardized COBRA Notice that was common to all Settlement Class Members, whether that Notice complied with applicable statutory requirements and accompanying regulations, and whether Defendant should be required to pay statutory penalties for utilizing that allegedly deficient Notice.

In similar cases involving COBRA notices, courts have found that common issues predominated. *See, e.g., Hicks*, No. 8:19-cv-261-JSM-TGW, Doc. 34 (M.D. Fla.) (finding the predominance requirement satisfied in COBRA notice case); *Valdivieso*, No. 8:17-cv-118-SDM-JSS, Doc. 89 (M.D. Fla.) (same); *Morris v. US Foods, Inc.*, No. 8:20-CV-105-SDM-CPT, 2021 WL 2954741, at *6 (M.D. Fla. May 17, 2021) (same); *see also Vazquez*, 2018 WL 3860217, at *6 ("the resolution of whether the COBRA Notice complied with the law, however, does not break into individualized inquiries; rather, it is an objective determination and central to the resolution of any claims of any purported class members. Thus, the question of individual class members'

motivations is irrelevant as to Defendant's liability for the allegedly inadequate COBRA notice.").

Because Defendant utilized a standardized COBRA Notice with respect to all members of the Settlement Class, Plaintiffs' claims "will prevail or fail in unison," and as such, predominance is met for purposes of settlement only. *Whirlpool Litig.*, 722 F.3d at 859 (quoting *Amgen Inc.*, 568 U.S. at 460); *see also Coulter-Owens v. Time, Inc.*, 308 F.R.D 524, 536 (E.D. Mich. 2015) (finding predominance satisfied) (Steeh, J.).

### 2. **Superiority.**

The class action device is also the superior means of adjudicating this controversy because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. Class actions are preferred over small, individual suits for damages because they provide a mechanism through which individuals who, under other circumstances, would not have the opportunity to seek redress from the defendant through litigation, can do so. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2010); *see also Amchem*, 521 U.S. at 617. Actions alleging a standard course of wrongful conduct are particularly well-suited for

class certification because they facilitate efficiency and uniformity. *Young*, 693 F.3d at 545.

As this Court held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 536.  And in the context of certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, all questions necessary to determine whether—for Settlement purposes—Defendant violated COBRA's (and its accompanying regulations') notice requirements are common to all Settlement Class Members. As such, a class action is a much more efficient use of judicial and party resources than multiple actions.

Further, absent a class action, members of the Settlement Class would almost certainly find the cost of individually litigating their claims to be prohibitive. Indeed, no other member of the proposed Settlement Class has brought any COBRA claims against Defendant, and thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd*., 287 F.R.D. 402, 408 (E.D. Mich.

2012). In fact, many members of the proposed Settlement Class may not even be aware that Defendant has allegedly violated their rights under ERISA/COBRA's notice requirements. Where class members are unlikely to discover (and vindicate) injuries absent certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545–46.

In the end, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate for purposes of approving the Settlement.

## IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

The procedure for review of a proposed class action settlement is a well-established two-step process. Conte & Newberg, 4 Newberg on Class Actions, § 11.25, at 38–39 (4th Ed. 2002). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties. Manual for Complex Litig. § 21.632 (4th ed. 2004).

While the Sixth Circuit has expressed a strong judicial policy favoring the voluntary conciliation and settlement of complex class action litigation, *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), it has not specified a particular standard for granting preliminary settlement approval.

Nevertheless, courts in this district generally look to two factors in making this determination. That is, preliminary approval should be given where the proposed settlement (1) does not disclose grounds to doubt its fairness, and (2) falls within the range of possible approval. *In re Packaged Ice*, 2010 WL 3070161, at *4; *Sheick v. Auto. Component Carrier, LLC*, No. 09-cv-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010); *see also Ford Motor Co.*, 2006 WL 1984363, at *4 ("The Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies"). The proposed Settlement in this case—which provides non-reversionary monetary payments for the Settlement Class—easily satisfies both factors.

## A.    There are No Grounds to Doubt the Proposed Settlement's Fairness.

First, there are no grounds upon which to doubt the proposed Settlement's fairness. The proposed Settlement was reached only after hard-fought litigation. As explained in detail above, Plaintiffs' counsel originally filed this action on

behalf of Gabriel Green in November of 2020.  (*See* Doc. 1).  Defendant almost immediately sought to have the case dismissed, with prejudice, by filing a comprehensive Motion to Dismiss the original Complaint.   (*See* Doc. 8). Plaintiffs' counsel then filed an Amended Complaint adding Gabriel Green's wife, Valerie Hall-Green, as a Plaintiff while also addressing several issues raised in Defendant's original Motion to Dismiss.  (*See* Doc. 9).

Defendant then filed a second Motion to Dismiss, this time seeking to have the Amended Complaint dismissed with prejudice. (*See* Doc. 10).

On May 4, 2021 the Court granted in part and denied in part Defendant's Motion to Dismiss. (Doc. 14, p. 12). Defendant then filed a Motion for Reconsideration (Doc. 21), which the Court also denied after substantive briefing (*see* Doc 24) by both Parties.  (*See* Doc. 26).

Shortly after Plaintiffs prevailed (in part) on Defendant's Motion to Dismiss, and Defendant's subsequent Motion for Reconsideration, the Parties conferred and submitted to the Court a proposed Joint Discovery Plan.  (Doc. 29). Next, Plaintiffs immediately propounded class-wide written discovery on Defendant and began the process of scheduling depositions.  Specifically, as set forth above, Plaintiffs propounded on Defendant written discovery requests, a

Fed.R.Civ.P. 30(b)(6) deposition notice, as well as notice of intent to serve a third-party subpoena.

Plaintiffs were in the process of obtaining the information needed to file their Motion for Class Certification when, after much discussion between counsel, the two sides agreed to mediate early to see if a class resolution could be reached. Based on the undersigned's extensive experience litigating cases with allegedly deficient COBRA notices, this case is well-suited for class treatment because of the uniform nature of Defendant's alleged conduct.

It was only after hard-fought motion practice that the Parties even tried to settle this case. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation. In fact, a settlement was only reached at the conclusion of intensive negotiations during a mediation session that involved many highly-experienced attorneys, and a highly respected and nationally known mediator.

As such, the Parties—each represented by counsel with significant experience in litigating class actions—had sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and that is borne out in the ultimate recovery, resulting in a payment to each Settlement

Class Member that is in line with the payments made in previous class settlements in cases involving allegedly deficient COBRA notices that have all received final approval. Thus, there are certainly no grounds from which to doubt the fairness of the proposed Settlement. *See Sheick*, 2010 WL 3070130, at *13 ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy[.]"); *see also IUE-CWA v. Gen. Motors Corp*., 238 F.R.D. 583, 597–98 (E.D. Mich. 2006) (finding that courts presume an absence of fraud or collusion absent evidence to the contrary).

**B.    The Proposed Settlement is Fair, Reasonable, and Adequate, and Within the Appropriate Range for Approval.**

Second, the strength of Plaintiffs' case compared to the proposed Settlement demonstrates that the proposed Settlement is fair, reasonable, and adequate, and well within the range of possible approval. Here, while Plaintiffs and proposed Class Counsel are confident in Plaintiffs' claims, they are cognizant of the risks that would accompany further litigation. Indeed, Defendant has made clear that, absent a settlement, it would continue its vigorous defense of this case. And of course, without a settlement, there would be the uncertainty and expense of trial, and the risks and delay of inevitable appeals. *See UAW v. Gen. Motors Corp*., No. 05-cv-73991-DT, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31,

2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement.").

More specifically, Plaintiffs are aware that Defendant would continue to assert a number of defenses on the merits, including that Plaintiffs should recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g., Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) aff'd 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice).

Accordingly, the negotiated relief is more than adequate, and should be approved. As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiffs being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Although the case had passed beyond the pleading stage, Named Plaintiffs had yet to survive class certification, summary judgment, or trial. Each of these phases of litigation presented serious risks, which the settlement allows Named Plaintiffs and the Settlement Class to avoid. See, e.g. *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Looking beyond trial, Plaintiffs are also keenly aware of the fact that Defendant could appeal the merits of any adverse decision, and that in light of the potentially significant aggregate statutory damages in play it would attempt to argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns. *See, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

Though Plaintiffs maintain that the sheer size of a class-wide statutory damages award cannot render it unconstitutional—*see* Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the BMW Guideposts Should Not Be Used to Review Statutory Penalty Awards,* 63 Rutgers L. Rev. 327 (2010); *cf. Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 523 U.S. 424, 443 (2001) ("I continue to believe that the Constitution does not constrain the size of punitive damages awards.") (Thomas, J. concurring) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 599 (1996) (Scalia, J., joined by Thomas, J., dissenting))—they also acknowledge that if they obtained a judgment on the merits and were awarded statutory damages on behalf of themselves and the class, Defendant would likely seek to have any damages award reduced on appeal.

Given these concerns, Plaintiffs and Class Counsel view the creation of the non-reversionary $600,000.00 Settlement Account—with an estimated $20.14 gross and $10.40 net payment per claimant payment—to be a significant victory for the Settlement Class. This is especially true considering the "all or nothing" nature of Plaintiffs' statutory claims: if they were to lose, the class would get nothing. *See Leonhardt v. ArvinMeritor, Inc*., 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008) ("The parties recognize, and the Court concurs, that continued litigation would be a high stakes 'zero sum' undertaking, in which one party is

likely to achieve complete victory while the opposing party experiences complete defeat because the parties' core positions . . . are irreconcilable."); *see also Olden v. LaFarge Corp*., 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) ("The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.") (internal quotation omitted).

Further, in terms of monetary relief, the Settlement's projected per claim payment is in line with settlements in other cases involving allegedly deficient COBRA notices. *See, e.g., Vazquez v. Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (court approved class action settlement with gross recovery of $13.00 per class member in deficient COBRA notice case); *Rigney, et al. v. Target Corp*., M.D. Case No. 8:19-cv-01432-MSS-JSS (March 24, 2021, Docs. 58-59) (court approved class action settlement with gross recovery of $17.00 per class member in deficient COBRA notice case); *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019, Doc. 41) (court approved class action settlement with gross recovery of $24.00 per class member in deficient COBRA notice case); *see also Gilbert v. SunTrust Banks, Inc*., Case No. 9:15-80415-Civ-

Brannon (S.D. Fla. July 29, 2016) (court approved class action settlement with gross recovery of $32.00 per class member in deficient COBRA notice case).

In sum, the proposed Settlement is fair, reasonable, and in line with the results achieved by other COBRA notice class actions that have received final approval from other federal courts.  For these reasons, Plaintiffs and proposed Class Counsel firmly believe that the monetary relief provided by the proposed Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. Therefore, the Court should grant preliminary approval.

## IV.    THE PROPOSED NOTICE SHOULD BE APPROVED.

Finally, Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). The substance of the notice to the settlement class must describe in plain language the nature of the action, the

definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, the time and manner for requesting exclusion, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). Notice is "adequate if it may be understood by the average class member." Newberg, § 11:53 at 167.

Under the proposed Settlement, each member of the Settlement Class will be sent a short form Notice of Settlement (*see* Exhibit C) via first-class U.S. Mail, informing them of the terms of the Settlement and their right to opt out or object. The short form Notice of Settlement will direct the Settlement Class Members to the Settlement Administrator's website where additional information will be provided.  The content of the long form Notice of Settlement (*see* Exhibit D), which will be available on the website, is also reasonable and appropriate.

The proposed short and long forms of the Notice of Settlement include all of this information.  In addition, the Notice of Settlement clearly spells out the terms of the proposed Settlement, provides a website address where class members can obtain a copy of the Agreement and other relevant documents, and includes a phone number that class members may call if they have any questions.

Accordingly, this Court should approve both the short and long forms of the Notice of Settlement, as both the contents of the notices and the methods of dissemination are reasonable.

## V.   CONCLUSION.

Based on the foregoing reasons, this Honorable Court should grant this Motion and enter an Order granting preliminary approval of the Parties' class action settlement.

***WHEREFORE***, Named Plaintiffs hereby move for this Court's preliminary approval of the Parties' class action Settlement;[4] preliminarily certifying the proposed Settlement Class; designating the Greens as the settlement Class Representatives and their attorneys as Class Counsel; approving the form and manner of class notice; authorizing the Settlement Administrator to disseminate the Notice of Settlement to the Settlement Class Members; setting a deadline to opt out or object; and scheduling a final approval hearing no earlier than one hundred twenty (120) days after this Court's Preliminary Approval Order.  A proposed Order is attached as Exhibit A.

---

[4] The Class Action Settlement Agreement is attached as Exhibit "B".

Dated this 31st day of January, 2022.

Respectfully submitted,

/s/*Brandon J. Hill*

**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com

and

Chad A. Justice
Florida Bar No. 121559
JUSTICE FOR JUSTICE, LLC
1205 N. Franklin St.
Tampa, FL 33606
Telephone (813) 254-1777
Fax (813) 254-3999

*Proposed Class Counsel and Attorneys*
*for Named Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record for all parties via the Court's CM/ECF filing system on this 31st day of January, 2022.

/s/*Brandon J. Hill*
BRANDON J. HILL