## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## DETROIT DIVISON

**GABRIEL GREEN and**
**VALERIE HALL-GREEN, individually**
**and on behalf of all others**
**similarly-situated,**

      **Plaintiffs,**

**v.**                                  **CASE NO.: 2:20-cv-13079-GCS-DRG**
                                             **The Honorable George Caram Steeh**

**FCA US LLC,**

      **Defendant.**

_____/

## PLAINTIFFS' UNOPPOSED MOTION FOR AND BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>SUMMARY OF MOTION</u>

The Class Representatives, Gabriel Green and Valerie Hall-Green (the "Greens" or "Plaintiffs"), respectfully file this Unopposed Motion seeking the Court's final approval of the class action settlement between Plaintiffs and FCA US LLC (collectively, the "Parties").   Plaintiffs request that the Court find that (i) the notice to the Settlement Class[1] satisfies the requirements of Due Process and Federal Rule of Civil Procedure 23, and (ii) the Settlement is fair, reasonable, and adequate, and determine final approval is warranted.

On March 31, 2022, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the claims asserted against Defendant under 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4. (*See* Doc. 37). Notice was then mailed to the approximately 27,048 Class Members.   The Class Members' reaction to the Settlement has been overwhelmingly positive.   In fact, to date not a single objection has been made to the Settlement.   Moreover, as set forth in the settlement administrator's attached Sworn Declarations, to date only six requests for exclusion have been received.   Considering the large size of the Settlement Class, coupled with the fact that this is a "claims paid" Settlement resulting in each Settlement Class Member automatically receiving a check, and no

---

[1] Capitalized terms have the same definitions as in the Parties' Class Action Settlement Agreement and Release (the "Agreement").

unclaimed funds revert to Defendant (instead they will be paid to *cy pres* recipient[2] subject to Court approval), the $600,000 Settlement obtained by the undersigned from Defendant is an excellent outcome.   For the reasons discussed in the accompanying brief, the Motion should be granted.

---

[2] The Parties have selected Legal Services of Eastern Michigan, a 501(c)(3) non-profit legal aid organization, and will ask the Court to approve it as the *cy pres* recipient.

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether this Court should find that notice to the Settlement Class satisfies the requirements of Due Process and Federal Rule of Civil Procedure 23, when direct notice, detailing the terms of the Agreement and individual options for objecting and opting-out was transmitted via U.S. Mail postcard and reached an estimated 98% of the Settlement Class?

**Plaintiffs' Answer: Yes**.

2.     Whether this Court should grant final approval of the Agreement and find it fair, reasonable, and adequate?

**Plaintiffs' Answer: Yes**.

## STATEMENT OF CONTROLLING AUTHORITY

Plaintiffs rely on Fed.R.Civ.P. 23(a) and Fed.R.Civ.P. 23(b)(3) to demonstrate why the Court should certify the Settlement Class on a final basis for settlement purposes.  Below Plaintiffs provide the controlling authority in the Order in which it is cited in the Memorandum of Law, along with the respective sections of the brief in which the authority is cited:

### The Notice Plan Satisfied Due Process

*Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014);

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974);

*Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008);

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 289 (6th Cir. 2016);

*UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *32-33 (E.D. Mich. Mar. 31, 2006);

### The Settlement Warrants Final Approval

*Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011);

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992);

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013);

*Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983);

Plaintiffs' Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522-23 (E.D. Mich. 2003);

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011);

In Protecting Settlement Class Members' Rights and Conserving Judicial Resources, the Settlement Serves the Public Interest

*Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) aff'd 774 F.3d 423 (8th Cir. 2014);

*Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *12 (E.D. Mich. Dec. 20, 1996);

*Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008);

*Morehouse v. Steak N Shake*, 938 F.3d 814, 818 (6th Cir. 2019)

*Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008);

*Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003);

*Rigney v. Target Corp.*, 8:19-cv-01432-MSS-JSS (M.D. Fla. Mar. 24, 2021) (ECF Nos. 58, 59);

*See In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011);

*Vazquez v. Marriott Int'l, Inc.*, No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020) (ECF No. 127);

*Vazquez v. Marriott Int'l, Inc.,* No. 817CV00116MSSMAP, 2018 WL 3860217, at *1 (M.D. Fla. Aug. 7, 2018);

*Youngstown Aluminum Prods., Inc. v. Mid-West Benefit Servs., Inc.*, 91 F.3d 22, 26 (6th Cir. 1996);

<u>The Complexity, Expense, and Duration of
Further Litigation Favor Final Approval</u>

*Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *25 (E.D. Mich. July 13, 2006);

*Kogan v. AIMCO Fox Chase, L.P*., 193 F.R.D. 496, 501-02 (E.D. Mich. 2000);

*Stinson v. Delta Mgmt. Assocs., Inc*., 302 F.R.D. 160, 164 (S.D. Ohio 2014);

<u>The Stage of the Proceedings and Amount of Discovery Completed
Weigh in Favor of Final Approval</u>

*In re Rio Hair Naturalizer Prod. Liab. Litig.,* No. MDL 1055, 1996 WL 780512, at *13 (E.D. Mich. Dec. 20, 1996);

*IUE-CWA v. Gen. Motors Corp*., 238 F.R.D. 583, 598 (E.D. Mich. 2006);

<u>The Opinion of Class Counsel Supports Final Approval</u>

*Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *25 (E.D. Mich. July 13, 2006);

*Williams v. Vukovich,* 720 F.2d 909, 922-923 (6th Cir. 1983);

<u>The Reaction of Absent Class Members Favors Final Approval</u>

*In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 527 (E.D. Mich. 2003);

*Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008);

<u>The Settlement Is Free from Fraud and Collusion</u>

*Dick v. Sprint Commc'ns Co. L.P.,* 297 F.R.D. 283, 295 (W.D. Ky. 2014);

*Kogan v. AIMCO Fox Chase, L.P*., 193 F.R.D. 496, 501-02 (E.D. Mich. 2000).

## I.      BACKGROUND AND OVERVIEW OF SETTLEMENT.

On November 18, 2020, Named Plaintiff Gabriel Green filed a Class Action Complaint (Doc. 1) ("Complaint") against Defendant in which he asserted claims for himself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by COBRA.

The Complaint alleged that Defendant violated COBRA notice requirements by providing Named Plaintiff Gabriel Green and the putative class members whom he sought to represent with a deficient COBRA notice (the "COBRA Notice") in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a).  Defendant specifically denies any wrongdoing with respect to these allegations.  The Parties have since reached an Agreement that, if granted final approval by this Court, will resolve all claims of Plaintiffs and putative class members against Defendant.

As set forth above and in the Parties' Agreement, the Settlement provides for Settlement Payments to be made to the Settlement Class Members.  If granted final approval by the Court, the settlement administrator will create a non-reversionary Settlement Account, into which Defendant will deposit a Gross Settlement amount consisting of $600,000.  The Settlement Class Members will not be required to take any action to receive a Settlement Payment, making it a

1

"claims paid" settlement.  Settlement Class Members will receive a *pro rata* gross amount of the Settlement Account totaling approximately $20.14.  Given the size of the class, this gross amount is consistent with COBRA class action settlements that have been approved by other federal courts.  If the requested amounts are granted for attorneys' fees and costs, administrative expenses, and Service Awards to the Plaintiffs, the Parties anticipate that each Settlement Class Member will receive a net Settlement Payment of approximately $10.40.

If any money remains in the Settlement Account after these distributions and after Settlement Class Members have had 60 days to cash their Settlement Payments, the Settlement Administrator shall pay leftover funds as a *cy pres* donation to a mutually agreeable non-profit 501(c)(3) charity, subject to Court approval.  The proposed Settlement is fair and reasonable and should be granted final approval by the Court.

### A.    Allegations Included in Plaintiffs' Complaint.

This is a putative class action brought by Named Plaintiffs against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a).  The lawsuit generally alleges that Defendant provided Named Plaintiffs and members of their putative class with a deficient COBRA Notice.   More specifically, Named Plaintiffs asserted that Defendant's COBRA Notice did not

adequately inform them how to exercise their rights to elect COBRA coverage because, in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*., Defendant's Notice: (i) included inaccurate and misleading threats of criminal penalties and fines; and, (ii) was not written in a manner calculated to be understood by the average plan participant.  As a result of the alleged violations in the Amended Complaint, Named Plaintiffs sought statutory penalties, injunctive relief, attorneys' fees, costs, and expenses on behalf of themselves and a putative class of all others similarly-situated.

By way of further background, Named Plaintiff Gabriel Green filed a First Amended Class Action Complaint adding his wife, Valerie, as a named plaintiff, on February 3, 2021.  (*See* Doc. 9).  Defendant filed a dispositive Motion to Dismiss on February 17, 2021, raising a variety of arguments, including lack of standing and failure to state a claim.  (*See* Doc. 10).

Ultimately, the Court granted in part and denied in part Defendant's Motion to Dismiss. Defendant also filed a Motion for Reconsideration (*see* Doc. 21) as to the Court's Order denying its Motion to Dismiss, which was also denied. (*See* Doc. 26).

The Parties filed their Joint Discovery Plan on August 20, 2021, and the Court entered its Scheduling Order on August 23, 2021.  That same day, Plaintiffs

propounded on Defendant written discovery requests, a Fed.R.Civ.P. 30(b)(6) deposition notice, as well as notice of intent to serve a third-party subpoena.

Following the denial in part of Defendant's Motion to Dismiss and denial of Defendant's Motion for Reconsideration—but after significant discovery efforts were already underway—counsel for both sides explored the possibility of an early class-wide resolution. Based on discussion between counsel for both sides, the Parties then agreed an early class-wide mediation might be productive to try and resolve this case on a class basis. Mediation was then scheduled for November 8, 2021, with highly respected ERISA and class action mediator, Martin F. Scheinman.

### B. <u>Defendant's Defenses</u>.

Had mediation been unsuccessful, Defendant had available to it myriad defenses to the Named Plaintiffs' allegations. Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 as to Named Plaintiffs and/or any putative class member. In fact, as part of the Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been alleged against it in this case, denies that the claims asserted by Named Plaintiffs are suitable for class

treatment other than for settlement purposes, and Defendant denies that it has any liability whatsoever.  The Agreement and this Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.

### C.    Settlement Negotiations and Mediation.

The Parties attended a mediation before a highly respected ERISA and class action mediator, Martin F. Scheinman, on November 8, 2021.  After extensive arm's length negotiations—between experienced counsel for an entire day and into the evening—a tentative deal was reached.  As a result of the agreement in principle reached at mediation, the Parties agreed to enter into the Agreement, for which Named Plaintiffs now seek final Court approval.

## II.    THE PROPOSED SETTLEMENT.

### A.    The Proposed Settlement Class.

The Agreement defines the proposed Settlement Class as follows: "All participants and beneficiaries in a FCA US LLC health plan that is subject to ERISA and COBRA who were sent the COBRA Notice by or on behalf of Defendant at any time during the Class Period [*i.e.*, between November 18, 2017, and November 18, 2020] who did not elect COBRA" (the "Settlement Class").

**B.** **Administration of Notice.**

Class Counsel hired a private, third-party vendor, American Legal Claim Services, LLC, ("ALCS") to administer notice in this case. The Parties have also agreed that all fees and expenses charged by ALCS shall be paid from the Settlement Account. The attached declarations of Jeffrey Pirrung and Snehal Indra, who work for ALCS, carefully explains exactly what steps ALCS undertook to disseminate the Court-approved notice.

**C.** **The Court's Order granting Preliminary Approval of the Settlement.**

On March 31, 2022, this Court issued an order preliminarily approving the Agreement between Plaintiffs, on behalf of the Settlement Class, and Defendant. In the Court's Order, the Court found that the settlement terms are "fair, reasonable, and adequate." (ECF No. 37, ¶ 10). Following entry of that Order, and as further explained by the attached sworn declarations from ALCS, Notice was then mailed out to the Settlement Class Members.

**D.** **The Class Members' Reactions to the Settlement.**

The settlement claims administrator, ALCS, sent the short form Class Notice approved by the Court to each of the Settlement Class Members on April 28, 2022, via first-class mail. (*See* Declaration of Snehal Indra from American Legal Claims Services, LLC, ¶ 3) (hereinafter "ALCS Decl."). The Settlement

Class Members overwhelmingly accepted the Settlement. No Class Members objected to the Settlement, and only six asked to be excluded.[3] (*See* ALCS Decl., ¶ 5). Given these facts, the Class Members' reactions were (and remain) overwhelmingly positive.

## III.   MOTION AND SUPPORTING MEMORANDUM OF LAW.

### A.   The Notice Plan Satisfied Due Process.

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *32-33 (E.D. Mich. Mar. 31, 2006) (citation omitted).  Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. See Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co.*

---

[3] The following class members filed exclusions and, thus, should not be bound by the settlement: Ahra Shall, Yassin Osman, Thomas Miller Jr., Charles Mullikin, Takia M. Reed, and Kristen Mann.  (*See* ALCS Decl., ¶ 5).

*L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014).  At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest."  *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (citation omitted).

That said, Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class.  *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 289 (6th Cir. 2016) (finding that notice and claims processes were appropriate where 90.8% of notices were successfully delivered to addresses associated with class members).

The notice plan here goes well above these standards, as it provided direct notice via a postcard to an estimated 98% of the Settlement Class.  At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met

the requirements of Rule 23 and Due Process. That plan has now been fully carried out by professional settlement administrator, ALCS.  Pursuant to the Settlement, Defendant provided ALCS with a list of the names and addresses of potential members of the Settlement Class.  ALCS successfully delivered the Court-approved notice via postcard to 26,618 class members.  (ALCS Supplemental Decl., ¶ 4).  Accordingly, an estimated 98% of the Settlement Class was provided with direct notice of the Settlement.

The postcard notices also directed members of the Settlement Class to the Settlement Website, where they were able to access important court filings, including the Motion for Attorneys' Fees; and see deadlines and answers to frequently asked questions. Given the broad reach of the notice, and the comprehensive information provided, the requirements of Due Process and Rule 23 are met.

**B.** **The Settlement Warrants Final Approval.**

The Federal Rules of Civil Procedure require judicial approval of class action settlements. Fed. R. Civ. P. 23(e); *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and

adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted).   To evaluate the fairness, reasonableness, and adequacy of a settlement agreement at final approval, courts look to seven factors: (1) the likelihood of success on the merits; (2) the public interest; (3) the complexity, expense, and duration of future litigation; (4) the opinions of class counsel; (5) the amount of discovery completed; (6) the reaction of absent class members; and (7) the risk of fraud or collusion (the "*UAW* factors"). *UAW*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). The court need only analyze the factors that are relevant to the settlement agreement and may weigh "particular factors according to the demands of the case." *Leonhardt v. ArvinMeritor, Inc.,* 581 F. Supp. 2d 818, 832 (E.D. Mich. 2008) (citations and internal quotations omitted). Although the factors may be assessed individually, the inquiry into any one factor often overlaps with other factors. *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011).

As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

1.   **Plaintiffs' Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval.**

The first *UAW* factor requires weighing the plaintiff's likelihood of success on the merits against the immediate benefits of settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522-23 (E.D. Mich. 2003). "Although this inquiry understandably does not require [the court] to decide the merits of the case or resolve unsettled legal questions," the fairness of a proposed settlement cannot be judged "without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631 (citation omitted). Ultimately, the question is whether the class's interests "are better served if the litigation is resolved by the settlement." *Leonhardt*, 581 F. Supp. 2d at 836 ("[A]bsent settlement, all class members would be subject to the uncertainty, risk, hardship, and delay attendant to continued litigation which ultimately might leave them with absolutely nothing.") (citation omitted). The likelihood that Plaintiffs will succeed on the

merits thus serves as a "gauge" against which the benefits of the settlement are measured. *Poplar Creek*, 636 F.3d at 245.

Here, Plaintiffs believe that their chances of succeeding in certifying an adversarial class and prevailing on summary judgment or at trial were strong, but they were also far from certain.  At the pleading stage, the Court denied in part Defendant's Motion to Dismiss and denied Defendant's Motion for Reconsideration.  Additionally, the uniformity of Defendant's conduct toward the class made the case, in Plaintiffs' view, amenable to certification. *See Vazquez v. Marriott Int'l, Inc.,* No. 817CV00116MSSMAP, 2018 WL 3860217, at *1 (M.D. Fla. Aug. 7, 2018) (certifying nationwide Rule 23 class in deficient COBRA notice case of consisting of approximately 19,000 class members).

That said, there remained several ways in which the class could wind up empty-handed. Absent final approval of the Settlement, Defendant would surely contest class certification and move for summary judgment, asserting any one (or more) of its numerous defenses on the merits.  For example, there is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g., Jordan v. Tyson Foods, Inc*., 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for

the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) aff'd 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages).   Accordingly, the negotiated relief is more than adequate, and should be approved.

If the case moved past summary judgment, Plaintiffs would still need to overcome significant hurdles in proving their case at trial.   Moreover, Plaintiffs recognize that Defendant would likely appeal the merits of any adverse decision at summary judgement or trial. And, due to the massive aggregated statutory damages in play, Defendant would likely argue—both at trial and on appeal—for a reduction of any damages awarded based on due process concerns. *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues."). Against this backdrop of uncertainty, the benefits of the Settlement are unmistakable.

13

In terms of monetary relief, the $600,000 non-reversionary Gross Settlement will be used to pay Settlement Class Members pro rata cash payments. This settlement is in line with—and in some cases exceeds—the payments class members have received in previous deficient COBRA notice cases approved by other federal courts. *See, e.g., Vazquez v. Marriott Int'l, Inc*., No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020), ECF No. 127 (court approved class action settlement with gross recovery of $13.00 per class member in case with allegedly deficient COBRA notice); *Rigney v. Target Corp*., 8:19-cv-01432-MSS-JSS (M.D. Fla. Mar. 24, 2021), ECF Nos. 58, 59 (court approved class action settlement with gross recovery of $17.00 per class member in case with allegedly deficient COBRA notice).

Where, as in this case, Plaintiffs' likelihood of success on the merits is tempered by uncertainty, the benefits of the Settlement are readily apparent. Thus, the first *UAW* factor supports final approval.

<h4>2.   <u>In Protecting Class Member's Rights and Conserving Judicial Resources, the Settlement Serves the Public Interest</u>.</h4>

A settlement that serves the public interest is likely to be found fair, reasonable, and adequate. *In re Cardizem*, 218 F.R.D. at 530. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial

resources. *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at
*12 (E.D. Mich. Dec. 20, 1996) ("Voluntary resolution [of complex class action
litigation] is in the public interest").

The instant Settlement furthers the objectives sought by Congress when it
enacted ERISA. By way of background, "COBRA is an amendment to ERISA
which ensures that employees who lose coverage under their company's ERISA
plan do not go without health insurance before they can find suitable replacement
coverage." *Youngstown Aluminum Prods., Inc. v. Mid-West Benefit Servs., Inc.*,
91 F.3d 22, 26 (6th Cir. 1996). "Under COBRA, an employer that sponsors a
group health insurance plan must offer employees and qualified beneficiaries the
opportunity to continue their health insurance coverage, at group rates but at their
own expense, for at least 18 months after the occurrence of a 'qualifying event'
and notice to the affected employee." *Morehouse v. Steak N Shake*, 938 F.3d 814,
818 (6th Cir. 2019).

Thus, the Settlement serves the Congressional goal of protecting an
individual's right to receive a compliant COBRA notice. It also advances the
public interest by conserving judicial resources, avoiding "notoriously difficult
and unpredictable" class action litigation that can consume the court's time and
money. *See In re Cardizem*, 218 F.R.D. at 530; *see also Leonhardt*, 581 F. Supp.

2d at 839. To be sure, if the Settlement does not receive the Court's final approval, the case's complex and lengthy litigation would continue and would require significantly more motion practice and potential appeals. *See Sims v. Pfizer, Inc*., 2016 WL 772545, at *9 (E.D. Mich. Feb. 24, 2016) (finally approving settlement and finding that "absent settlement, all class members would be subject to the uncertainties, hardship, and delay attendant to continued litigation."). As a result, there is no need to deviate from the "strong public interest in encouraging settlement of complex class action litigation*." See In re Packaged Ice Antitrust Litig*., 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) (citation omitted). Simply put, the Settlement serves the public interest because it furthers the purpose of COBRA while also conserving judicial resources. The second *UAW* factor, therefore, weighs in favor of final approval by the Court of the Parties' class action settlement.

### 3. The Complexity, Expense, and Duration of Further Litigation Favor Final Approval.

The third *UAW* factor requires the consideration of the complexity, expense, and duration of further litigation, and the comparison of those risks to the relief afforded under the settlement. *See, e.g., In re Cardizem*, 218 F.R.D. at 523; UAW, 2006 WL 891151, at *18 (citation omitted). Final approval is favored in cases, such as this one, where the parties are "likely [to] expend significant

16

time and money litigating [a] case through class certification, dispositive motions, trial, and appeal," further chipping away at the amount—and possibility—of class recovery. *Stinson v. Delta Mgmt. Assocs., Inc*., 302 F.R.D. 160, 164 (S.D. Ohio 2014).

Undoubtedly, further litigation in this case would produce substantially more motion practice including, as described above, an adversarial motion for class certification, motions for summary judgment, and inevitable appeals. Thus, the third *UAW* factor is satisfied, further warranting final approval by the Court of the Parties' class action settlement.

### 4.    The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval.

The fourth *UAW* factor examines the stage of the proceedings and the amount of discovery that has taken place.  *In re Rio Hair Naturalizer Prod. Liab. Litig.,* No. MDL 1055, 1996 WL 780512, at *13 (E.D. Mich. Dec. 20, 1996). Courts have held that it is not the amount of formal discovery completed, but whether the parties and the court have sufficient information to make a reasoned decision with respect to settlement. *See, e.g., IUE-CWA v. Gen. Motors Corp*., 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("That the parties conducted their investigation through informal discovery . . . is not unusual or problematic, so

long as they and the court have adequate information in order to evaluate the parties' relative positions.").

The Parties filed their Joint Discovery Plan on August 20, 2021, and the Court entered its Scheduling Order on August 23, 2021. That same day, Plaintiffs propounded on Defendant written discovery requests, a Fed.R.Civ.P. 30(b)(6) deposition notice, as well as notice of intent to serve a third-party subpoena. Following the denial in part of Defendant's Motion to Dismiss and denial of Defendant's Motion for Reconsideration—but after significant discovery efforts were already underway—counsel for both sides explored the possibility of an early class-wide resolution. Based on discussion between counsel for both sides, the Parties then agreed an early class-wide mediation might be productive to try and resolve this case on a class basis. Mediation was then scheduled for November 8, 2021, with highly respected ERISA and class action mediator, Martin F. Scheinman

In the end, counsel for both Parties were well-equipped with the information needed to make a reasoned decision about settlement, and they have conveyed this information to the Court. As such, the fourth *UAW* factor weighs in favor of final approval.

### 5. <u>The Opinion of Class Counsel Supports Final Approval</u>.

The fifth *UAW* factor assesses the opinion of experienced counsel regarding the settlement. *UAW*, 497 F.3d at 631; *Williams v. Vukovich,* 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Counsel's judgment is entitled to significant weight. *Leonhardt*, 581 F. Supp. 2d at 837. The deference afforded to counsel's opinion depends on both their skill and experience, *Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *25 (E.D. Mich. July 13, 2006), as well as "the amount of discovery completed and the character of the evidence uncovered." *Williams*, 720 F.2d at 923.

Here, Class Counsel are well-respected attorneys with significant experience litigating consumer class actions of similar size, scope, and complexity. (*See generally* Declarations of Luis A. Cabassa, Brandon J. Hill, and Chad A. Justice). Class Counsel believe that the Settlement is fair, reasonable, and adequate. (*See, e.g.,* Hill Decl., ¶¶ 20-21; Cabassa Decl., ¶¶ 26-27; Justice

19

Decl., ¶¶ 21-23). The fifth *UAW* factor also supports final approval of the Parties'
class action settlement.

### 6. The Reaction of Absent Class Members Favors Final Approval.

The sixth *UAW* factor weighs in favor of approval where the majority of
class members have elected to remain in the settlement class without objecting.
*In re Cardizem*, 218 F.R.D. at 527. A small number of opt-outs and objections
"are to be expected in a class action" and do not impact the settlement's fairness.
*Id*. (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th
Cir. 2008) (inferring that most "class members had no qualms" with settlement
where 29 out of 11,000 class members objected).

In this case, more than 27,000 individuals were provided notice, not a
single Settlement Class Member has objected, and only six individuals have
opted out. This exceptional participation rate and complete lack of opposition to
the Settlement Class leaves no question that the class members view the
Settlement favorably, which further underscores its fairness. Given this favorable
reaction, the sixth *UAW* factor supports final approval.

### 7. The Settlement Is Free from Fraud and Collusion.

The final *UAW* factor ensures that the settlement is the "product of arm's
length negotiations as opposed to collusive bargaining." *Kogan v. AIMCO Fox*

*Chase, L.P.*, 193 F.R.D. 496, 501-02 (E.D. Mich. 2000). The absence of fraud or collusion is presumed unless there is evidence to the contrary. *IUE-CWA*, 238 F.R.D. at 598. *See UAW*, 497 F.3d at 628; *Dick v. Sprint Commc'ns Co. L.P.,* 297 F.R.D. 283, 295 (W.D. Ky. 2014) (recognizing that courts "presume the absence of fraud or collusion in class action settlements" and finding that the exchange of data through litigation and the absence of allegations of fraud or collusion indicated that the settlement was the result of a good-faith negotiation) (quoting *Leonhardt*, 581 F.Supp. 2d at 838).

The instant settlement is the product of informed negotiations conducted at arm's-length by experienced counsel representing adversarial parties.

As detailed above and in their attached Declarations, Class Counsel have built their practice upon employment law and consumer class action litigation like this and have significant experience with COBRA notice litigation. Likewise, Defendant's counsel—attorneys from sophisticated law firms with national practices—have a wealth of experience representing employers in ERISA related matters across the country.  Thus, there is no question that the Settlement is entirely free from fraud or collusion.  The final *UAW* factor, thus, also supports the Court granting final approval of the Parties' class action settlement.

## IV.    __CONCLUSION__.

For the foregoing reasons, Plaintiffs respectfully request that the Court

enter an order granting final approval to the Agreement.

Dated this 28th day of July, 2022.

Respectfully submitted,

/s/*Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com

**Chad A. Justice**
Florida Bar No. 121559
**JUSTICE FOR JUSTICE, LLC**
1205 N. Franklin St.
Tampa, FL  33606
Telephone (813) 254-1777
Fax (813) 254-3999

*Class Counsel and Attorneys for Named
Plaintiffs*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record for all parties via the Court's CM/ECF filing system on this 28th day of July, 2022.

/s/*Brandon J. Hill*
**BRANDON J. HILL**