UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIEL GREEN and VALERIE
HALL-GREEN, individually and on
behalf of all others similarly situated,

        Plaintiffs,

        Case No. 20-13079

    v.

        Hon. George Caram Steeh

FCA US LLC,

        Defendant.
_____/

OPINION AND ORDER GRANTING MOTIONS FOR FINAL
CERTIFICATION OF CLASS, APPROVAL OF CLASS ACTION
SETTLEMENT, AND FOR ATTORNEY'S FEES (ECF NOS. 40, 41)

Plaintiffs Gabriel Green and Valerie Hall-Green seek final approval of their proposed class-action settlement with Defendant FCA US, LLC. The court granted preliminary approval of the settlement on March 31, 2022. Notice of the proposed settlement was mailed to approximately 27,000 class members. No objections have been filed and Plaintiffs received only six requests for exclusion. The court must now determine whether class members received sufficient notice, consistent with Rule 23 and due process, and whether the settlement is fair, reasonable, and adequate. On

August 8, 2022, the court held a hearing via Zoom videoconferencing technology; no objections were lodged at the hearing.

I. Background Facts

Plaintiffs brought this suit under COBRA, alleging that FCA failed to provide them with adequate notice of their right of continued health care coverage. They alleged that the COBRA notice they received was not "written in a manner calculated to be understood by the average plan participant" as required by 29 C.F.R. § 2590.606-4.

Defendant filed a motion to dismiss, which the court granted in part and denied in part, noting that "[a]lthough perhaps a close call, Plaintiffs have plausibly alleged that the COBRA notice is not written in a manner calculated to be understood by the average plan participant because it contains a misstatement of law. It remains to be determined whether, under an objective standard, the notice is sufficient to allow the average plan participant to make an informed decision regarding whether to elect coverage." ECF No. 14 at 12-13. Defendant also filed a motion for reconsideration, which the court denied.

Subsequently, the parties engaged in mediation and reached a preliminary settlement. The total settlement amount to be paid by Defendant is $600,000. Once proposed attorney's fees ($200,000),

litigation costs ($6,549), settlement administration costs ($73,516), and proposed Plaintiff service awards ($10,000) are subtracted, each class member is expected to receive a net payment of $10.40.

II.     Class Certification

The settlement class is defined as follows: "All participants and beneficiaries in a FCA US LLC health plan that is subject to ERISA and COBRA who were sent the COBRA Notice by or on behalf of Defendant at any time during the Class Period [i.e., between November 18, 2017 and November 18, 2020] who did not elect COBRA."

As part of its preliminary approval order, the court granted class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3). *See In re American Medical Sys., Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996). As discussed below, the court finds that the factual basis for this decision has not changed and that class certification remains warranted.

The court is endowed with broad discretion in determining whether to certify a class. *Id.* Such discretion is limited, however, by the necessity of undertaking a "rigorous analysis" within the framework of Rule 23. *Id.* A class action may be maintained if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of

-3-

> the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to the above elements, Plaintiffs must show that one of the three conditions set forth in Rule 23(b) is met. Plaintiffs seeks certification under 23(b)(3), which provides that a class may be certified if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.*

This case is appropriate for class certification. The class is numerous (over 27,000), and the commonality and typicality prongs are met because there are common factual and legal issues between class members, as they all received the same challenged COBRA notice. The common issues regarding this standard COBRA notice predominate over potential individual issues, and class treatment is a superior method of litigating a large number of relatively small claims in an efficient manner.

The class representatives are proposing that they receive $5,000 each ($10,000 total) as a "service award" for bringing this action. This is substantially in excess of the $10.40 each that other class members are expected to receive. Courts are beginning to take a more skeptical view of

> the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to the above elements, Plaintiffs must show that one of the three conditions set forth in Rule 23(b) is met. Plaintiffs seeks certification under 23(b)(3), which provides that a class may be certified if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.*

This case is appropriate for class certification. The class is numerous (over 27,000), and the commonality and typicality prongs are met because there are common factual and legal issues between class members, as they all received the same challenged COBRA notice. The common issues regarding this standard COBRA notice predominate over potential individual issues, and class treatment is a superior method of litigating a large number of relatively small claims in an efficient manner.

The class representatives are proposing that they receive $5,000 each ($10,000 total) as a "service award" for bringing this action. This is substantially in excess of the $10.40 each that other class members are expected to receive. Courts are beginning to take a more skeptical view of

service awards because they create an incentive for the class representative to settle regardless of the benefit to the other class members. This creates a misalignment of the interests of the class and the representatives and "the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013).

The Eleventh Circuit recently determined that service or incentive awards to class representatives are inconsistent with Supreme Court precedent and are not allowed. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) ("[A]lthough it's true that such awards are commonplace in modern class-action litigation, that doesn't make them lawful."). The Sixth Circuit has not expressly disallowed such awards, but has cautioned that "we should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Dry Max Pampers Litig.*, 724 F.3d at 722. To ensure that the representatives will fairly and adequately represent the class, courts in this district have decreased incentive awards to reduce the disparity between what the class members and class representatives

receive. *See, e.g., Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 628 (E.D. Mich. 2020) (citing cases and reducing class representative award from $10,000 to $1,000) (Borman, J.).

In this case, a $5,000 award to each class representative ($10,000 to a married couple) has the effect of creating a substantial misalignment of the interests of the representatives and the class. The court will reduce the incentive award to $1,000 each, to more closely align Plaintiffs' interests with those of the class, yet still reflect the time and effort Plaintiffs expended in bringing and assisting in this litigation. With that modification, the court will grant final class certification.

   III.   Notice

Plaintiffs hired American Legal Claim Services, LLC, to disseminate notice of the proposed settlement to the class. Accounting for undelivered mail, approximately 98% of the class (26,618 persons) received postcards notifying them of the settlement. The notice fairly apprised the class of essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23; *UAW v. General Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007). "To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534

F.3d 508, 514 (6th Cir. 2008). Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The court finds that the notice provided here – notice by mail to 98% of the class – meets the requirements of Rule 23 and due process.

IV. Adequacy of Settlement

Class actions may only be settled with court approval, "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). *See also UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

The parties' settlement was facilitated by a neutral mediator and there is no evidence of fraud or collusion. Each class member will automatically be mailed a check without having to submit a claim. This method of distributing relief will be effective, given the success in mailing notice to 98% of the class. The total amount of the settlement and net amount to be received by each class member is relatively modest; however, given the technical nature of the alleged violation and the uncertain amount of actual damages suffered, the relief appears adequate. The inevitable costs and delays of litigation and the real risk of ultimately recovering nothing underscore this conclusion. With the exception of the class representatives, all class members are to be treated equally. Unclaimed funds will not revert to Defendant, but will be paid to a *cy pres* recipient.[1] No objections to the settlement have been filed, and only six members chose to opt out.[2] Class counsel is experienced in litigating similar class actions and has provided zealous and competent representation here.

Accordingly, in light of these considerations, the court finds the settlement to be fair, reasonable, and adequate.

---

[1] The court approves the parties' selected recipient: Legal Services of Eastern Michigan, a nonprofit legal aid organization.
[2] These individuals are Ahra Shall, Yassin Osman, Thomas Miller Jr., Charles Mullikin, Takia M. Reed, and Kristen Mann, who are not bound by the settlement.

V.  Attorneys' Fees

Plaintiffs' counsel requests an award of $200,000 in attorneys' fees representing one third of the common fund, as well as $6,549 in litigation costs. To determine a reasonable attorneys' fee in common fund cases such as this one, courts may calculate the fee based upon a percentage of the fund or the lodestar method, with a view toward making "sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Courts in this circuit have developed a preference for the percentage method in common fund cases. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003). Under this method, requests for one-third of the common fund are typically approved. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 2019 WL 4746744, at *6 (E.D. Mich. Sept. 30, 2019), *aff'd*, 833 Fed. Appx. 430 (6th Cir. 2021).

Plaintiffs' counsel undertook this litigation on a contingent fee basis, bearing the risk of non-recovery. Considering the outcome of the case, the novel legal questions presented, the benefit rendered to the class, counsel's skill and experience, and the effort expended, the proposed fee is reasonable. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). Counsel also seek to be reimbursed for the mediator's fee, filing fee, and

service fees in the amount of $6,549, which are supported by the record and reasonable.

VI. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motions for final approval of class action settlement and for attorneys' fees (ECF Nos. 40, 41) are GRANTED, consistent with this opinion and order. The court retains jurisdiction to enforce the settlement.

Dated: August 8, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 8, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk